# COURT OF APPEALS.

## FREDERICK H. PUMPELLY agt. THE VILLAGE OF OWEGO.

Where the plaintiff was *taxed* for village purposes, by the authorities of the village of Owego, Tioga county, N. Y., which was assessed and levied under the provisions of the acts of 1851 and 1854, and the assessment was partly for debts incurred before the enlargement of the village boundaries by the act of 1857, and partly to meet the expenses for village purposes subsequently, the estimate for such tax being prepared for 1858, and submitted to a meeting of the electors pursuant to the act of 1851, but not being in detail showing the sums necessary for each object of expenditure, but a general estimate for the sum of $1,000:

*Held*, that the estimate for a mere gross amount was sufficient, and a substantial compliance with the statute, and the electors had authority to vote the tax in that manner. Besides, such authority does not depend upon the form in which the estimate is prepared and submitted to them by the board of trustees, consequently the tax was legally assessed under the provisions of the act of 1851.

The plaintiff was not a resident or property-holder within the limits of the corporate village of Owego before the passage of the act of 1857, but if that act was valid and operated to amend the village charter he became such by force of it. The title is "An act enlarging the boundaries of the village of Owego in the county of Tioga."

*Held*, that although the title or preamble of a statute may be said to be no part of it, yet it may be used to enable the courts to arrive at the intention of its framers, and the intention was clearly in this case to amend the old charter, and not to create a new corporation, with none of the powers of a municipal corporation.

Also *held*, that the twofold objections to the constitutionality of this act were groundless, to wit: First. That the legislature has no constitutional authority to impose or authorize the corporation of the village to impose a tax upon persons or property, thus brought into it, against their consent, to pay its existing debts; and, Second. That the act was passed in violation of the constitutional provision that " on the final passage in either house of the legislature of every act which imposes, continues or revives a tax, or creates a debt or charge, the question shall be taken by

yeas and nays, and three-fifths of all the members elected to such house shall, in such cases, be necessary to constitute a quorum therein."

*Held*, first, that there is no constitutional limitation upon the legislative power to tax the persons and property of individuals within the state. The power may be executed as well to pay debts incurred before the property-holder comes within its jurisdiction, as those incurred afterwards. When a municipal corporation is created, and the state confers upon it a portion of its taxing power to raise money for municipal purposes, the property-holder within the limits of the corporation is subject to taxation, without regard to the question when the liabilities were contracted to discharge which the tax was imposed.

*Held*, second, that the legal presumption is that the law received the constitutional vote required, and that the requisite number were present at its passage, although the certificate of the secretary of state may be wanting in his publication of the laws, and if it is designed to raise that question it must be expressly put in issue by the pleadings. The complaint contains no express averment that three-fifths of all the members elected to each house were not present on the final passage of the bill. The plaintiff avers that the bill did not pass when three-fifths were present, because in the publication of it by the secretary of state the words "three-fifths being present" nowhere appear in such publication.

But it was not required that three-fifths of the members should be present at the final passage of the act. It simply enlarged the territorial bounds of the village. It imposed no tax, nor did it continue or revive one, or create a debt or charge within the provision of the constitution. It became a part and parcel of the acts of 1851 and 1854 under which the tax was passed, and was on the day of its passage read and construed, together with these latter acts, as one entire act. Such was its legal effect.

It is conclusively settled in this state that an action will not lie to restrain the collection of a tax, unless the case is brought within some acknowledged head of equity jurisdiction.

There is no allegation in this complaint bringing the case within any acknowledged head of equity jurisdiction. The charge that the corporation intend to proceed, and will proceed unless restrained, not only to collect the tax in question, but from time to time to assess and tax the plaintiff's property for similar purposes, amounts to nothing in that direction.

Where the defendant is in default by not demurring or answering, the plaintiff's application for the relief demanded in his complaint may be denied notwithstanding. In an equity action, although no demurrer or answer is interposed, the plaintiff is not entitled to the judgment asked for in his complaint as a matter of course.

By the default the defendant's right was not waived to appear and object

to the jurisdiction of the court, and that the complaint did not state facts sufficient to constitute a cause of action. . The Code expressly reserves the right to a defendant, though the objection be not taken either by demurrer or answer.

*June Term*, 1863.

APPEAL from order of supreme court affirming an order of the special term, denying the relief demanded in the plaintiff's complaint.

On the 8th August, 1858, the plaintiff brought his action to restrain the defendant from collecting a tax assessed against him as one of the taxable inhabitants of the village of Owego, and also for an injunction to restrain the defendant from assessing, levying and collecting like taxes in the future. The tax had been assessed upon the plaintiff's property situate within the limits of the village of Owego, as described by, an act of the legislature, passed April 15th, 1857, and the collector had levied upon a horse of the plaintiff for its payment. The facts stated in the complaint sufficiently appear in the following opinion.

The defendant interposed no answer or demurrer to the complaint, and at a special term held in the county of Tioga, in March, 1859, the plaintiff made an application for the relief demanded in the complaint, which was opposed by the defendant. The relief demanded was denied. The plaintiff appealed to the general term of the supreme court from the order denying the relief prayed for in the complaint, and in November, 1859, the general term affirmed the order. On the 13th December, 1859, the plaintiff appealed from the last mentioned order to this court.

THOMAS FARRINGTON, *for plaintiff*.

I. The trustees, I apprehend, had the right to cause to be levied and assessed a tax upon the real and personal estate situate within the boundaries of the village, as described in the act of April 15, 1857, the sum of $1,767.67, in addition to

the $1,000 voted to be raised at the annual election in January, 1858. No special meeting was required. They had the right under section seven of the act of 1854. By this section they were authorized, from time to time, to raise by tax, and levy and collect in the manner provided by sections 35, 36, 37, 38, 39 and 40, of the act of 1851, to pay off the indebtedness. It is clear section 41 of the act of 1851 was not at all applicable to the act of 1854, hence it is not mentioned in section 7 of the act of 1854.

II. Does the default of the defendant to anwer or demur, entitle the plaintiff to the relief asked for in the complaint? I apprehend not. The defendant by so doing does not waive the ".objection to the jurisdiction of the court," nor the " objection that the complaint does not state facts sufficient to constitute a cause of action " (*Code*, § 148).

This is no new principle. " A defendant against whom a default has been taken does not waive his right to move in arrest of judgment for a substantial defect in the declaration, by attending the execution of a writ of inquiry " (2 *Dunlap's Practice*, 689; 1 *Cain*, 104, 106). This was always so when the defendant did not interpose an answer or a demurrer, but allows judgment by a default (2 *Dunlap's Practice*, 688; 1 *Strange*, 425; 6 *Taunton*, 650; *Bingham on Judgments*, 71; 8 *id.*, 335). You may move in arrest of judgment when judgment has been taken by default (*Graham's Practice*, 2d ed., 641, *and two of the cases cited;* 1 *Strange*, 425; 6 *Moore*, 209; 3 *Seld.*, 576).

The court will in all cases, in case of judgment by default, where there is a substantial defect in the complaint, allow an arrest of judgment. Judgments by default are not given with due deliberation (2 *Paine & Duer Practice*, 139; *see also* 140). Arrest after default (2 *Marsh*, 326; 1 *Sellon's Practice*, 498, 499; 2 *Tidd's Practice*, 825, where the doctrine is well considered and cases cited). The plaintiff must set forth such facts in his complaint as will entitle him to the relief asked. The defendant admits nothing by the default

that is not set forth and alleged as true in the complaint. " All that a party admits," say the court, in *Raynor* agt. *Clarke* (3 *Code Report*, 231), " by suffering a default, is the truth of the facts alleged against him." The plaintiff can claim no rights beyond the facts stated in his complaint.

The defect in the plaintiff's complaint is fatal if it does not set forth an equitable cause of action, and entitle the plaintiff to the relief demanded; it is one that cannot be cured and would not be waived by any pleading, and the objection could be raised at any time when the parties were before the court, at a special or general term (8 *How. Pr. R.*, 160, BAROULO, justice).

The principle contended for by the plaintiff, that under subdivision 2 of section 246, he is entitled to the relief asked, is not true and cannot be sustained. The 148th section of the Code expressly reserves to the defendant the right to object to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause of action (*Gould et al.* agt. *Glass*, 19 *Barber*, 179, *see page* 186; 2 *Duer* 650; *vide* 653; *Montgomery County Bank* agt. *The Albany City Bank*, 3 *Seld.*, 459; *vide* 464). The plaintiff, in case of a default, can never have relief beyond that demanded in his complaint (*Section* 275 *of the Code*). " The case made by the complaint, and the limits of the issue alone determine the extent of the power of the court" (2 *Kern.*, 341). That the complaint does not show an equitable cause of action, see also the opinion of MASON, justice, in this case, made at special term, on motion to dissolve the temporary injunction, which is as follows, viz. :

SUPREME COURT.

FREDERICK H. PUMPELLY
agt.
THE VILLAGE OF OWEGO.

" The case of *Doolittle* agt. *The Supervisors of the County of Broome*, recently decided by the court of appeals, holds

and decides that an injunction suit in the nature of a bill in equity, to restrain the levy and collection of an illegal tax, cannot be maintained by a tax-payer; that it does not belong to the jurisdiction of a court of equity to restrain the levy and collection of an illegal tax at the suit of a tax-payer; and, following that decision, I dismissed the complaint in such a case, in the suit of *J. H. Smith, President of the Bank of Norwich*, agt. *The Supervisors of Chenango*, and the following cases may be referred to as holding the same doctrine: *Moore* agt. *Sneedley and others*, 6 *J. Ch. Rep.*, 28; *The Mayor of Brooklyn* agt. *Meserole*, 26 *W. Rep.*, 138, 139; 2 *Abbott*, 250; *Willson* agt. *Mayor, etc., of N. Y.*, 1 *Denio*, 418; *The Chemical Bank* agt. *Mayor of N. Y.*, 1 *Abbott*, 80; *N. Y. Life Ins. Co.* agt. *Board of Supervisors*, 1 *id.*, 250; *id.*, 4; *id.*, 79; 4 *Duer*, 192; *Livingston* agt. *Hollenback*, 4 *Barb. S. C. Rep.*, 10; *Betts* agt. *The City of Williamsburgh*, 15 *id.*, 255, 263, 264; *Bouton* agt. *The City of Brooklyn*, 7 *How. Pr. Rep.*, 198; *Thatcher* agt. *Dusenbury*, 9 *id.*, 32; *McCoy* agt. *The Corporation of Chillicothe*, 3 *How. Ohio Rep.*, 368; *Van Dorne* agt. *Mayor, etc., of N. Y.*, 9 *Paige*, 388. I am aware that there is conflict in the decisions of special terms upon this question in this court; but, as I understand, the court of appeals have decided against the jurisdiction of this court to restrain, by injunction in such a case, the levy and collection of an illegal tax; the remedy of the party in such a case is an action against those who illegally impose the tax (*Mygatt* agt. *Washburne*, 1 *Smith's N. Y. R.*, 316). As the plaintiff cannot sustain this suit upon the facts stated in his complaint, this motion to vacate the order of injunction must be granted, unless the defendant's default in not answering the complaint presents an insuperable objection to the granting of this motion, which I do not think it does. The default admits the fact stated in the complaint, but does not admit the plaintiff is entitled to the relief demanded. On the contrary, the defendant may claim and insist, when the plaintiff applies to the court for the relief demanded, that the

Pumpelly agt. Village of Owego.

plaintiff is not entitled to the judgment he asks for. He may move in arrest of judgment after default for a substantial defect in the complaint (*Graham's Practice*, 642, 2d ed.; *Calligan and others* agt. *Hallett and others*, 1 *Cain*, 104). This motion to vacate injunction is granted, with ten dollars costs.

" CHARLES MASON."

It is a fundamental rule, which is always indispensable to be observed, that the bill must state a case within the appropriate jurisdiction of a court of equity. If it fails in this respect, the error is fatal in every state of the cause, and can never be cured by any waiver or course of proceeding by the parties; for consent cannot confer a jurisdiction not vested by law (*Story's Equity Pleadings*, 9, § 10; *also* § 34).

Before the complaint was framed, the plaintiff should have seen whether he had not an adequate remedy at law (1 *Story's Eq. Jurisprudence*, 97, § 80). If so, I apprehend he should have sought relief there.

The complaint must state sufficient matter to entitle the plaintiff to a decree. No relief can be granted except for matters stated therein (1 *Barber's Ch. Pr.*, 39; *Crockett* agt. *Lee*, 7 *Wheat.*, 522).

The plaintiff, under the old chancery practice, was not entitled to his decree when the bill was taken *pro confesso*, as a matter of course. The cause had to be brought to a hearing, the same as where an answer was put in. And it was not the practice of this court to allow the plaintiff to take a decree according to the prayer of the bill, and he was not permitted to draw up the decree (1 *Hoffman's Ch. Pr.*, 551; *Rose* agt. *Woodruff*, 4 *J. Ch. Rep.*, 547; 2 *Barb. Ch. Pr.*, 97; *Lube's Eq. Pleadings*, 29, *note* [1]; *Geary* agt. *Sheridan*, 8 *Ves.*, 192; 2 *Maddock's Ch. Pr.*, 247, 248). These cases clearly show that the decree is not to be granted unless the complaint sets forth such a state of facts as would entitle the plaintiff to the relief claimed. The failing to demur does not

waive the right of the defendant to object on the trial, for the first time, that the complaint does not state facts sufficient to constitute a cause of action (*Higgins* v. *Furman*, 2 *Duer*, 650; 3 *Seld.*, 464; 19 *Barb.*, 186).

An incurable defect is not waived by any pleadings, but may be taken advantage of. at any time (8 *How. Pr. Rep.*, 159; 18 *Barb.*, 494).

The defendant, under the second subdivision of sec. 246, was obliged to apply to the court for the relief demanded in the complaint, and the defendant was entitled to eight days' notice, and had the right to appear and oppose the relief demanded on two grounds: want of jurisdiction, and that the complaint did not set forth facts sufficient to constitute a cause of action (*Code* § 148, *Rule* 24; 1859 *Voorhies' Code*, 201).

An injunction can only be granted when it appears by the complaint that the plaintiff is entitled to the relief demanded (*Morgan* agt. *Quackenbush*, 22 *Barb.*, 76; 1 *Paige Ch. Rep.*, 97; § 219, *Code*; 4 *Kern.*, 537, 538). The Code has not, by the union of equitable and legal powers, enlarged in any respect the previous powers of the courts to grant injunctions where a perpetual injunction was the relief sought (4 *Duer Sup. Ct. Rep.*, 192).

It is clear, I apprehend, from the authorities above cited, and from section 148 of the Code, that the defendants have not waived the right to object to the jurisdiction of the court, etc.; and the following authorities, relied upon by the plaintiff to show jurisdiction in this court, cannot be considered as applicable to this case (2 *Seld.*, 147; 4 *Paige*, 77; 2 *id.*, 509; 6 *Cow.*, 726, 727; 15 *N. Y.*, 622, 617; 1 *Clark V. Ch. R.*, 71).

It is clear, too, that the complaint does not show a case that would authorize the court to grant an injunction. The court will not grant an injunction to restrain the collecting of a tax.

III. Has the supreme court the power, and the right, to

restrain the collection of a public tax? Has it the jurisdictional right? If it had the power, will this court reverse its judgment and remit the case back to that court, inasmuch as the granting of an injunction rests very much in the discretion of the court?

1st. The granting or the refusing of an injunction is a matter resting in the sound discretion of the court. It should never be granted unless it is a fit and appropriate mode of redress under all the circumstances of the case (2 *Story's Eq. Jurisprudence*, § 959 *a*, § 959 *b; Bacon* agt. *Jones*, 4 *Mylne & Craig*, 433; *Bramwell* agt. *Halcomb*, 3 *Mylne & Craig*, 737; see the remarks of lord *Cottenham; Brown* agt. *Newell*, 2 *Mylne & Craig*, 570, 571; *vide lord* BROUGHAM's *remarks; The Earl of Ripon* agt. *Hobart*, 1 *Cooper's Select Cases*, 333; *S. C.*, 3 *Mylne & Keen*, 169).

The tax was collected by the collector immediately after the injunction was dissolved at special term. Hence, the plaintiff could take nothing now by his action, and his only object now is costs; this the court will not countenance (*Bonapart* agt. *Camden & Amboy R. R. Co.*, 1 *Baldwin Circuit Ct. Rep.*, 218). Justice BALDWIN says: " There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, the injury impending threatened, so as to be averted only by the protective process of injunction."

2d. The plaintiff, upon principle and authority, was not entitled to the relief demanded in the complaint. The court will not grant an injunction to restrain the collection of a tax, but will leave the party to his legal remedy. The review and correction of all errors, mistakes and abuses, in the exercise of the power of inferior and subordinate jurisdictions,

and in the official acts of public officers, belongs exclusively to the supreme court.

The following authorities may be relied upon to maintain and sustain the foregoing principles, viz. : *Moores* agt. *Sneedley et al.*, 6 *J. Ch. Rep.*, 28, 31 ; *Livingston* agt. *Hollenback*, 4 *Barb.*, 9, 16 ; *Van Rensselaer* agt. *Kidd*, 4 *id.*, 17–19 ; *Van Dorn et al.* agt. *The Mayor, etc., of N. Y.*, 9 *Paige*, 388–391 ; *Wiggin* agt. *The Mayor, etc., of New York*, 9 *id.*, 18 ; *The Mayor of Brooklyn* agt. *Messerole*, 26 *W. Rep.*, 132 to 141 ; *The People ex rel. Onderdonk* agt. *The Supervisors of Queens Co. et al.*, 1 *Hill*, 195, 200 ; *Betts* agt. *The City of Williamsburgh*, 15 *Barb.*, 255, 263 ; 2 *Abb.*, 248, 250 ; *Blake* agt. *The City of Brooklyn*, 26 *Barb.*, 301, 302, 303 and 304 ; *Woods* agt. *Draper et al.*, 24 *id.*, 187 to 199 ; *Mace et al.* agt. *The Trustees of Newburg*, 15 *How. Pr. Rep.*, 161 to 164 ; *The Chemical Bank* agt. *The Mayor of N. Y. et al.*, 12 *id.*, 476, 478 ; *Bouton* agt. *The City of Brooklyn et al.*, 7 *id.*, 198, 205 to 208 ; *Doolittle et al.* agt. *The Supervisors of Broome*, 16 *id.*, 512 to 525 ; *Same* agt. *Same*, 18 *N. Y.*, 155 to 168 ; *Heywood* agt. *The City of Buffalo et al.*, 4 *Kern.*, 534 to 546 ; 25 *N. Y.*, 312 ; 24 *id.*, 93 ; *Fredericks* agt. *Mayer*, 1 *Bosw.*, 227, 232 ; *The N. Y. Life Ins. Co.* agt. *The Supervisors of the City of N. Y.*, 4 *Duer*, 192, 198 and 200 ; *Monk* agt. *Harper et al.*, 3 *Edw. Ch. Rep.*, 109 ; *Noah* agt. *Brown et al.*, *Hopk.*, 347.

"An injunction to restrain a collector from selling the plaintiff's property to satisfy a school tax, assessed by the proper school district, is not within the scope of equitable relief" (*Sayer* agt. *Tompkins*, 23 *Miss.* [2 *Jones' Rep.*], 443) ; 17 *U. S. Digest*, 324, *No.* 18). "The supreme court will not interfere, by injunction, to prevent a sale of personal property for non-payment of taxes" (*Lockwood* agt. *St. Louis*, 24 *Miss.* [3 *Jones*], 20 ; 17 *U. S. D.*, 324, *No.* 19).

Equity will not interfere, by injunction, to protect a legal right which may be tried at law, unless under very special circumstances (*Wooden* agt. *Wooden*, 2 *Green's Ch. R.*, 429).

A court of equity cannot enjoin the collection of a tax in the ordinary way, even if the law authorizing the tax is unconstitutional (*McCoy* agt. *Chilicothe*, 3 *Ham.*, 380).

A party aggrieved by the action of the county commissioners in the assessment of taxes against him cannot maintain a bill for an injunction to prevent the collection of the tax (*Hughes* agt. *Kline*, 30 *Penn.*, 227; *Dean* agt. *Todd*, 22 *Missouri* [1 *Jones*], 90. *See the cases cited in Tillinghast & Sherman's Practice*, 685).

An injunction will not be granted to restrain the collection of a tax, notwithstanding the assessment and warrant are illegal and void, as the legal remedy in such case is adequate. Courts of equity will not interfere with the speedy collection of taxes, except upon the clearest grounds (*Dodd* agt. *The City of Hartford*, 25 *Conn.*, 232; *vide Bolster* agt. *Caterlin*, 10 *Ind.*, 117; *Moons* agt. *Sneedley et al.*, 6 *J. Ch. Rep.*, 28, *above cited*).

The plaintiffs were owners of land situate in the town of Mooers, Clinton county. The supervisors of the county, at their annual meeting, passed a resolution allowing a bounty of twenty dollars against the town for each grown wolf killed therein since the last annual town meeting. The town, at its annual meeting, having so voted, wolves were killed, and the supervisors allowed against the town the sum of twenty dollars and forty cents, which was included in the tax list, and the warrant was issued and delivered to the collector of the town. That most of the moneys were allowed to persons not residents of the town, and a greater proportion of the wolves were killed after the time allowed for that purpose. The supervisors decided that non-residents were equally entitled to the bounty as residents. An injunction was prayed for to stay the collection of the tax until the plaintiff could obtain a mandamus to compel the supervisors to vacate their resolution, or that a *certiorari* issue to remove the proceedings of the supervisors into the supreme court. The injunction was granted, and was afterward dissolved, the court

Pumpelly agt. Village of Owego.

holding that it had no authority to review and correct errors and mistakes and abuses in the exercise of the powers of subordinate public jurisdiction and the official acts of public officers; that belonged to the supreme court exclusively.

The case of *Livingston* agt. *Hollenback*, 4 *Barb.*, 9. The complaint had been filed and an injunction obtained to restrain the sheriff from advertising and selling the plaintiff's land to collect a tax that had been imposed under the act passed May 13, 1846, to equalize taxation. An error complained of, and the principal one, was, that the assessors had refused to receive the affidavits of the plaintiff and correct the assessment in accordance therewith, whereby the plaintiff was required to pay taxes on property that he had not. The court held that the illegal items included in the tax did not vitiate it. The court say, if the proceedings are void the law affords an adequate remedy without a resort to a bill in equity. The supreme court has no power to restain, by injunction, the collection of taxes irregularly or erroneously assessed.

The principle is fully decided by the cases above cited, that in case of a void or voidable tax, the remedy for the party aggrieved is by seeking his redress in a court of law, and not elsewhere.

The case of *Heywood* agt. *The City of Buffalo*, 4 *Kern.*, above cited, would seem to dispose of this case, and it is in many respects almost identical. It is alleged that the tax imposed was wholly unauthorized and entirely without authority. The tax was levied under an act of the legislature which authorized and empowered the common council to purchase or lease, in any portion of the city, land for schoolhouses, fencing, and building thereon, etc. The taxes for such purposes were to be levied upon each separate district. There was a large amount included in the tax for purposes not mentioned in the act, but should have been levied upon the property of the city and included in the general tax. The court held that no injunction could issue, and that the party must prosecute, to get redress, in a court of law.

The courts of this state have no power to restrain the acts of officers who are proceeding under authority of a law of the state, even though the law be unconstitutional (2 *Abb.*, 248). Without further reviewing the authorities above cited, it may be asserted as true that the plaintiff in his complaint has not charged or imputed to the defendant any fraud in causing the tax to be levied and raised; nor is it alleged or pretended that the acts of the defendant will lead to a multiplicity of suits; nor is it asserted that the plaintiff will suffer an irreparable injury; nor does the complaint show that the plaintiff has not a perfect remedy at law. Is it not quite clear, then, that the plaintiff has not set forth in his complaint an equitable cause of action? There is no cause to interfere by injunction. There was no substantial injury about to be done to the plaintiff. The collector was proceeding to collect a tax that had been properly assessed upon the property of the plaintiff, one that was obligatory until reversed by the supreme court upon *certiorari.* There is not a fact stated in the complaint that would render the tax void, unless the court should hold the act enlarging the boundaries of the village, passed April 15, 1857, was void. The mere fact that improper items were included in the tax does not render it void. It can only be attacked by a proceeding by *certiorari,* brought to the supreme court for that specific purpose. The action and doings of the trustees and assessors were judicial acts in making the assessment.

An action will not lie to restrain the collection of a tax, on the bare ground that the assessment was illegal. There must be, in addition, facts bringing the case under some acknowledged head of equity jurisdiction (25 *N. Y.; The Susquehanna Bank* agt. *The Board of Supervisors of Broome County et al.*).

IV. The supreme court has no more power, when sitting as a court of equity, than the chancellor formerly had. The court has not enlarged the equitable powers of the court (4 *Kern.*, 537).

Notwithstanding the Code has abolished the distinctions at law and suits in equity by section 69, yet equity jurisprudence remains a distinct branch, and which has been repeatedly recognized by our courts; nothing is dispensed with except the former names of actions. The subject-matter that consti-tutes the basis of the claim to relief, must be stated now as well as formerly (*Willard's Equity Jurisprudence*, 36, 37). And although section 69 has abolished the forms of actions, and section 140 of the forms of pleadings, there is not any section that has abolished the causes of actions, and none that has compounded them into one homogeneous mass (12 *H. Pr. R.*, 529, 523; 3 *Kern.*, 493). Justice SELDEN remarks: " It is, in my judgment, clear that the legislature has not the constitutional power to reduce all actions to one homogene-ous form." The common law remains as much the standard of civil rights as ever; equity is, as it always was, auxiliary to it, and is never to be invoked excepting where the rules of law are found inadequate to afford such relief as the peculiar circumstances of particular cases demand. In addition to the cases referred to under the third point, *vide* 2 *U. S. Equity Digest*, 151, *No.* 324, where many of the cases under this head are collected.

The Code has not authorized the supreme court to grant injunctions in cases where it could not before (4 *Duer*, 192, 198). It cannot restrain the acts of the village in this case.

V. The act passed April 15, 1857, enlarging the boundaries of the village, was constitutional. If not, the act passed April 6, 1860, made it so, and legalized " the acts and doings of the trustees in levying or collecting taxes, and all taxes levied since the passage of that act (1857)."

The legal presumption is that the law received the consti-tutional vote required, and that the requisite number were present at its passage, although the certificate of the secretary to that effect was wanting; and if it is designed to raise that question, it must be expressly put in issue by the pleading (4 *Seld.*, 317 *to* 330; 22 *W. Rep.*, 9; 25 *id.*, 608).

2d. The act of April 15, 1857, simply enlarged the terri-
torial bounds of the village. It imposed no tax, nor did it
continue or revive one, or create a debt or charge, within
article 7, section 14 of the constitution (*The People* agt. *The
Supervisors of Chenango*, 4 *Seld.*, 318). The acts that author-
ized the imposing of the tax were passed April 9, 1851, and
April 15, 1854, and were applicable to the then present boun-
daries, but on the 15th of April, 1857, the act last mentioned
became a part and parcel of the acts of 1851 and 1854, and
was then on that day read and so construed together as one
entire act; such was the legal effect (*Ely & Catlin* agt.
*Horton*, 15 *N. Y.*, 595–598; *Sedgwick on Statutes and Con-
stitutional Law*, 247–251).

It was made the duty of the legislature to provide for the
organization of cities and incorporated villages, and to restrict
their power of taxation, assessment, borrowing money, con-
tracting debts, and loaning their credit, so as to prevent
abuse in assessments, and in contracting debts by such
municipal corporations (*Article* 8, § 9, *of the Constitution of
this State;* 24 *Barb.*, 446, *et sequitur;* 13 *H. Pr. Rep.*, 204).
The power to tax is incorporated in the village charter, which
is set forth in the plaintiff's complaint.

3d. It is contended on the part of the plaintiff that the act
of April, 15, 1857, is not an amendment of the village charter,
but is an independent act, and does not carry with it to the
new territory any of the provisions of the charter, and that
the village of Owego has the same powers given by statute to
all corporations, and none other (2 *R. S.*, 5*th ed.*, 596, § 3).
This strikes me as a monstrous proposition, and too absurd to
admit of argument.

The title of the act, "An act enlarging the boundaries
of the village of Owego, in the county of Tioga, passed April
15, 1857," recognizes the village, and declares the object of
the act; and the second section repeals the provisions of any
act heretofore passed inconsistent with this act. Now, all
that was inconsistent with it was the acts before passed that

related to the boundaries, and the remainder of the charter remained unaltered.

It may be said that the title or preamble of the act is not part of it. Both in England and in this country it was the common practice to state in the preamble the motives and inducements to the passage of the law. In this country it is used by jurists as a guide to the intention of the legislature, and lord COKE and lord BACON held that the preamble was the key to open the understanding of the statute. It enables the court to arrive at the intention of the framers of the act (*Sedgwick on Statutes and Constitutional Law*, 54 and 55).

The act must be considered an amendment of the charter that was clearly and manifestly the intention of the legislature, and all the property included within its corporate bounds was subject to taxation (*The People* agt. *The Mayor of Brooklyn*, 4 *Comst.*, 419–442).

The inhabitants that lived without the limits by the act of 1854, and within the limits by the act of 1857, were not exempt from taxation by the act, and were therefore subject to be assessed.

4th. It is clear that the plaintiff was liable to be assessed to pay off and discharge the then existing liabilities of the village as well as future liabilities. The plaintiff, upon being brought within the corporation, immediately became entitled to an equal participation of all the blessings and rights that naturally flow from a well-regulated incorporated village to its inhabitants, and he was also required, by his new relation, to bear his proportion of the burdens imposed, to more effectually secure his new acquired rights.

In *Sharp et al.* agt. *Spier* (4 *Hill*, 82), BRONSON, J., says: "Our laws have made a plain distinction between taxes which are burdens or charges imposed upon persons or property to raise money for public purposes, and assessments for city and village improvements, which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the person

Pumpelly agt. Village of Owego.

has derived from the improvement " (*See also The People* agt. *The Mayor of Brooklyn*, 4 *Comst.*; 419, 428, 434).

The plaintiff claims that it is inequitable to tax him to pay off an indebtedness that had accrued against the village for improvements and the purchase of land for village purposes prior to April 15, 1857. Suppose the plaintiff had lived within the bounds of the village as fixed by the act of April, 1854, and he had then been possessed of a large amount of property that was not subject to taxation, and while the law thus stood the debts were contracted, but before the debts were paid the charter was amended so as make the property before exempt taxable, can it be said that the property thus made liable to taxation could not be taxed to help pay off the debts so due and owing ? No one, I apprehend, would so contend (10 *W. Rep.*, 186), and yet this seems to be the doctrine contended for by the plaintiff. Would a person who should settle within the limits of the village, after the debts had been contracted and before all were paid, and bring with him a large amount of property subject to taxation, be exempt ? The proposition is, to me, preposterous. It is contrary to the very principles of our government. As well might a man who should move from Connecticut and settle in this state, and bring with him $500,000, object to being taxed to pay the debts of our state that had been previously incurred.

VI. The plaintiff has mistaken his remedy, if there was any error committed that the law would recognize on the part of the defendants or the assessors. He should have sought his redress through the courts of law, by action, or the proceedings should have been reviewed upon *certiorari* issued for that purpose (15 *W. Rep.*, 198–211 ; 4 *Kern.*, 534, 539, 540 ; 16 *Barb.*, 249 ; 15 *id.*, 255, 263 ; 26 *id.*, 301, 304 ; 29 *id.*, 396 ; 15 *H. Pr. Rep.*, 161 ; 7 *id.*, 198, 206 ; 4 *E. D. Smith*, 675).

N. W. DAVIS, *for defendant.*

The summons and complaint were served on the defendant on the 28th day of August, 1858. No answer or demurrer was put in, though the defendants appeared by attorney.

The plaintiff, on due notice to defendants, applied to the court at a special term, held at Owego on the 18th day of March, 1859, for the relief demanded in the complaint.

The court denied the plaintiff's application for relief, on the ground that the complaint does not state facts sufficient to constitute a cause of action of an equitable nature ; equitable relief only being demanded.

## SUPREME COURT.

| FREDERICK H. PUMPELLY agt. THE VILLAGE OF OWEGO. | *Tioga Special Term, March,* 1857. |
|---|---|

*Copy Justice* BALCOM's *Opinion at Special Term.*

The plaintiff is a resident of the village of Owego, and has brought this action to restrain the defendant from collecting a tax assessed against him, as one of the taxable inhabitants of the village, and for an injunction to restrain the defendant from assessing like taxes in future. The defendant made default in answering, and the plaintiff now applies to the court for the relief demanded in the complaint. The defendant opposes the granting of the relief, on the ground that the complaint does not state facts sufficient to constitute a cause of action.

BALCOM, J.—This action being an equitable one, the plaintiff is not entitled to judgment as a matter of course. He is obliged to apply to the court for the relief demanded in the complaint (*Code,* § 246, *sub.* 2). And there being no answer, he cannot have any relief exceeding that demanded in his complaint (*Code,* § 275). When judgment has been entered

Pumpelly agt. Village of Owego.

by default, upon a complaint that does not show a cause of action, the defendant may appeal therefrom to the general term (*Raynor* agt. *Clarke*, 3 *Code*, 230; *Caines*, 104; *Gra. Pr.*, 2d ed., 641; *Wilkingson* agt. *Tiffany*, 4 *Abb.*, 98). And I am of the opinion the plaintiff should not have judgment in an action wherein he must apply to the court for it, though the defendant do not answer, if the complaint does not state facts sufficient to constitute a cause of action. The amount of tax assessed upon the defendant's property is only forty dollars and seven cents; but the value of the horse which the collector seized on the warrant for the collection of it is $150. Now, if the tax is void, the plaintiff has a perfect legal remedy against the trustees who issued the warrant, and must pursue that; and I think the suspicions and belief of the plaintiff, that the defendant is about to assess other taxes on his property, do not furnish any ground for restraining the assessment thereof; and I am of the opinion the complaint does not state facts sufficient to constitute a cause of action of an equitable nature, and equitable relief only is demanded in it. This conclusion agrees with that arrived at by brother MASON, when he decided the motion to dissolve the temporary injunction issued in the action. The motion for judgment for the relief demanded in the complaint must be denied, with ten dollars costs.

From this order, denying plaintiff's application, he appealed to the court at general term, where the order was affirmed; from which order of affirmation he now appeals to this court.

I. If it is true that the complaint does not state facts sufficient to constitute a cause of action of an equitable nature, still plaintiff is entitled to the relief demanded.

1. We insist that the default of the defendant to answer or demur, in all cases, entitles the plaintiff (*under sub.* 2, § 246, *Code*) to the relief demanded in the complaint.

The relief, of course, must be such as the court has power to grant; but, we submit, there is no other qualification.

All the conditions required by this provision of the Code, to entitle the plaintiff to judgment, are:

1st. A summons and complaint.

2d. Service and proof thereof.

3d. Failure to answer or demur; then,

4th. The judgment *may* be had.

The word "may," in that connection, we insist is *imperative*, entitling the plaintiff to the judgment, and requiring judgment to be rendered.

Thus it was held in *Alderman Backwell's Case* (1 *Vern.*, 152) that the chancellor was bound to grant a commission of bankruptcy, on due application and proof, though the words of the statute were that he *may* grant (*Newburgh Turnpike Co.* agt. *Miller*, 5 *J. Ch. R.*, 113).

The complaint may be defective, still "judgment may be had." The remedy for such defects is by demurrer.

The Code is professedly an entire if not a perfect system of practice. The rights and the remedies prescribed are intended to be exclusive, and not concurrent with others differing from them. The causes of demurrer are to be taken advantage of by demurrer, and not by motion or on motion.

If the court, on motion for judgment, give effect to the objection that the complaint does not set out a cause of action and deny the motion, the anomaly is presented of an action remaining in court with no mode of terminating it, either by judgment or otherwise. And the provision of the Code, "that judgment may be had," is nullified.

The position which we here take is in accordance with the old practice.

"A judgment by default is an implied admission of the plaintiff's cause of action" (1 *Dunlap's Pr.*, 374, *and note* 23).

Paine and Duer enumerate four descriptions of judgment, of which the third mentioned is as follows:

"3. For the plaintiff, when the facts, and the law arising thereon, are admitted by the defendant; which is the case in

judgments by confession, *non sum informatus* and *nihil dicit*" (2 *Paine & Duer Pr.*, 231, 232).

The judgment which we ask for here is like the former judgment by *nihil dicit*, on which the facts and the law arising thereon are admitted by the defendant.

So, in the court of chancery, upon a bill taken *pro confesso*, Hoffman,. in his practice, says: "According to my experience the course of our courts has been to allow the plaintiff to take a decree according to his prayer" (1 *Hoff. Pr.*, 551).

And in the supreme court, under its present organization, where a suit was commenced by a tax-payer to restrain the common council of New York from certain alleged misappropriations of the funds of the city, and default was made, no answer or demurrer having been put in, judge EDMONDS held, upon application by the plaintiff for the relief demanded in the complaint, that the defendants, by suffering the bill to be taken as confessed, had conceded the jurisdiction of the court, as well as the title to the relief asked for, and gave judgment accordingly (*Adriance* agt. *The Mayor of New York*, 1 *Barb. S. C. R.*, 19).

"When a bill praying an injunction is taken *pro confesso*, a perpetual injunction will be decreed" (*Eden on Injunctions*, 253, 1*st Am. ed.*).

But a ground of objection to this motion has been attempted to be drawn from the former practice of this court, by which judgment was sometimes arrested.

True, after judgment by default, the defendant might, within four days after entry of judgment under the former practice, move in arrest of judgment for any such defect in the declaration as would render the judgment reversible.

Under the Code, however, there can be no such thing as a motion in arrest of judgment.

The entry of judgment in all cases is specifically provided for by the Code, and, when entered, it is a final judgment, and there is no power left in the court to modify the practice in this respect.

If there be such defect in the complaint now as would, under the former practice, authorize an arrest of judgment, such defect can be taken advantage of only by demurrer or appeal; arrest of judgment is excluded:

Besides, this is not a case for arrest of judgment, even under the old practice. It will not be pretended that no cause of action is set out in the complaint. The utmost that is pretended is that no cause of action of an equitable nature is set out; and it is said that plaintiff has an adequate remedy at law.

Section 148 of the Code does not apply to cases of default (15 *How. Pr. R.*, 500).

"A defendant cannot move for a nonsuit on the ground of the insufficiency of plaintiff's complaint" (*Kelly* agt. *Kelly*, 3 *Barb.*, 419).

"If complaint be defective, its sufficiency ought to be tested by a demurrer, and not on a motion for nonsuit" (*Id. ; and see Carley* agt. *Wilkins*, 6 *Barb.*, 557, 562–564). "The Code is silent as to the time and manner in which defendant, after failing to demur to complaint, can insist that it contains no cause of action. In determining this question we must be governed by the analogy of the former practice."

He is manifestly entitled, therefore, to the benefit of some judgment. Hence, an arrest of judgment would not be granted.

2. There being a cause of action set forth in the complaint, even if that is but a legal cause of action, the defendants cannot, in this way and at this time, object to the equitable relief demanded.

The defense in equity, of want of jurisdiction in the court, on the ground that the plaintiff has a perfect remedy at law, cannot be made at the hearing if not set up in the answer (*Leroy* agt. *Platt*, 4 *Paige*, 77; *Truscott* agt. *King*, 2 *Seld.*, 147; *Grandin* agt. *Leroy*, 2 *Paige*, 509; *Hawley* agt. *Cramer*, 4 *Cow.*, 726, 727). The cases above cited were cases in which answers had been put in, but no objection was made in the answers that plaintiff had adequate relief at law; and

it was held that such objection could not be first made at the hearing.

The defendants had, in the language of the chancellor, in *Hawley* agt. *Cramer*, "submitted the cause to the cognizance of the court, and they now come too late with this objection to its jurisdiction, unless the court be wholly incompetent to grant the relief which the complainants have sought by their bill."

In the case now before the court, the defendants have appeared and "submitted the cause to the cognizance of the court," equally as if they had answered. The default to answer altogether does not place defendants in a better position, in respect to this question, than if they had answered, omitting to object to the jurisdiction; they have equally omitted now, to object to the jurisdiction, and are therefore not in a condition to object at the hearing.

The court is not incompetent to grant the relief sought.

In *The Bank of Utica* agt. *City of Utica* (4 *Paige*, 399) the parties, after bill filed, had stipulated to waive all objections to the jurisdiction of the court, in order to present the question of the right of defendant to tax the plaintiff on its "surplus fund" to the decision of the court. The chancellor, in deciding the case, said: "By the written stipulation between the parties for the purpose of bringing this question before the court for a decision upon the complainants' bill alone, the defendants have expressly agreed to waive the objection that there was a certain and adequate remedy at law for the complainants, if the construction of the situate is as contended by them; and in this case there can be no doubt as to the power of the court, if it take jurisdiction of the cause, to give a perfect remedy to the complainants by the ordinary decree for a perpetual injunction against the collection of this tax" (7 *Hill*, 261).

The objection in this case being equally waived by the default, and the court having power to grant the relief, we submit confidently that we are entitled to it, and, conse-

quently, that the order appealed from it erroneous and should be reversed.

II. The case shown by the complaint is one which entitles the plaintiff to the relief demanded.

1. As to the illegalities of the tax, when measured by the charter itself, under which defendants proceed, and which alone, perhaps, constitute ground for a legal action only, and would not alone, except for the default of defendants, be sufficient to warrant a demand of equitable relief, we will first refer to them.

(1.) No sufficient estimate, such as the charter requires, was made by the trustees, on which the sum of $1,000 was voted by the electors.

An estimate in detail, showing the sums necessary for each object of expenditure, was of course intended; else why require that it be subjected to the inspection of the electors for ten days prior to the time when they are to vote upon it?

A mere statement of a gross amount, such as was made in this case, does not fulfill the requirement.

The estimate is, at the annual meeting, to be submitted to the electors; and " *thereupon* " they may direct to be raised by tax on said village such sum " as they shall deem necessary and proper," not exceeding $1,000, for the purposes stated in the estimate.

Now, as corporations (municipal as well as others) are strictly limited to those powers specially conferred upon them, and where power to tax is given, a power in derogation of the common law, it must be strictly pursued (4 *Hill*, 76), the electors, without the estimate required, had no authority to vote the tax (*Halstead* agt. *The Mayor, &c., of New York*, 3 *Coms.*, 433).

2. A part of the lamp and watch tax, to wit, $269.47, to pay corporation bond to Cresson, Stewart & Peterson for lamp-posts, was assessed and levied on the whole village, and formed a part of the tax assessed against plaintiff, although he and his property were not within the lamp and watch

district, upon the property in which district the charter requires such tax to be raised.

3. The sum of ten dollars, to pay rent for pound, was added by the trustees to the $1,000 voted by the electors, without authority; also the sum of two dollars and sixty-seven cents.

These vitiate the whole tax.

2. But beyond this non-conformity to the charter, by which we mean the act of April 9, 1851, we contend that the act of April 15, 1857, under which defendants claim authority to tax plaintiff, confers no such authority, because,

1. That act is not an amendment of the charter, but an independent act, and carries with it to the new territory none of the provisions of the charter.

There is, in the act, no adoption of any of the provisions of the charter; no reference to the charter. It is a new act of incorporation, and is itself the only charter of the village thereby incorporated.

It has the powers given by the general law to all corporations, but no others.

Section 3 of title 3, chapter 18, part 1 of the Revised Statutes provides as follows: " In addition to the powers enumerated in the first section of this title, and to those expressly given in its charter, or in the act under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given."

The power to tax is in derogation of common rights, and such power, especially, will not be implied (*Sharp* agt. *Spier*, 4 *Hill*, 76).

It is true that the title of the act is as follows: "An act enlarging the boundaries of the village of Owego, in the county of Tioga."

But the title is no part of the act (1 *Kent Com.*, 430, 1*st ed.*).

It may be resorted to for the purpose of removing ambi-

guities, where the intent is not plain; but where the words of the enacting clause are clear and positive, recourse cannot be had to it.

The true rule is, as declared by Mr. J. BULLER, in *Crespigny* agt. *Wittenoom* (4 *Term R.*, 793), that "the preamble may be resorted to in restraint of the generality of the enacting clause, where it would be inconvenient if not restrained; or it may be resorted to in explanation of the enacting clause if it be doubtful. This is the whole extent of the influence of the title and preamble in the construction of the statute" (1 *Kent Com.*, 431, 1*st ed.*).

The words of this statute are clear and positive; there is no ambiguity in them; hence, the title cannot be resorted to.

The same rule applies now under section 16 of article 3 of Cons.: "The character (of an act) is to be determined by its provisions, and not by its title" (*The People* agt. *McCann*, 2 *Smith*, 61).

Besides, we may insist that it is unconstitutional because the title does not specify the subject of the bill.

But even if the intention was to enlarge the boundaries of the village, as then existing, there is no necessity that the provisions of the charter, in regard to taxation, should be extended over this enlargement. The legislature might well intend that the party brought into the village by this act should be exempt from municipal taxation. It was just, thus to exempt him; it would be unjust and oppressive not to exempt him. He was brought in without his consent, and against his protest. The village had incurred debts; why should he be made liable to contribute to the payment of those debts, and why should the burden of taxation for municipal purposes be imposed upon him at all? It was entirely competent for the legislature to discriminate in his favor and exempt him altogether (*The People* agt. *Mayor, &c., of Brooklyn*, 4 *Coms.*, 427).

The court will be slow to attribute to the legislature an intention to subject this protesting party to the unjust lia-

Pumpelly agt. Village of Owego.

bility of contributing to pay the debts of a municipal corporation, even if the legislature had power so to do; and will not be disposed to strain a point of construction in favor of such an outrage.

Besides, by subjecting plaintiff to such taxation, another fundamental principle of the charter itself, as well as of government, would be violated, to wit, taxation without representation. The charter provides, in effect, that no corporator shall be taxed without an opportunity to vote *aye* or *no* on the question whether the tax shall be laid.

This opportunity is denied to plaintiff if he is to be subjected to this taxation. It is taxation without representation. The court will not give such construction to this act as to attribute such violation of right to the legislature.

(2.) It certainly cannot be said that the village constituted by the act of April 9, 1851, and the village constituted by the act of April 15, 1857, are identically the same; yet all the power of taxation conferred by the act of 1851 is with reference to the village constituted by that act.

The electors may direct a sum not exceeding $1,000 to be raised by tax on "said village;" that is, the village constituted by the first section of the act.

But where is there any authority authorizing the electors to direct any sum to be raised by tax on the village constituted by the act of 1857?

If, by the act of 1857, it had been declared that "the first section of the act of 1851 is amended so as to read as follows," then the new description would have been substituted into that first section, and thenceforth that section would have read according to the new description. But now there is no incorporation of the new description into the act of 1851, so that the "said village" can never refer to that new territory. Hence the electors have no power to direct money to be raised by tax on the new territory.

No such power is granted by the act of 1857, nor can it be drawn by necessary implication from the act of 1851.

(3.) If, however, the act of 1857 is to be considered as an amendment of the charter, then, so far as it undertakes to render the persons and property of persons thus brought in, against their consent, liable to be taxed to pay the existing debts of the village, it is unconstitutional and void.

This is not merely oppressive, but it is "against natural right and justice," and, therefore, violative of a great fundamental principle of government; and, in the language of chief justice Spencer, in *Bradshaw* agt. *Rogers* (20 *J. R.*, 106), "any law violating that principle must be a nullity."

We, are aware of the distinction made by the court between the power to tax and the right of eminent domain, and that the prohibition against the taking of private property for public uses, without just compensation, has been held not to apply in cases of taxation. Still, we insist that the power of taxation may be abused, and the spirit, if not the letter, of the constitution violated by such abuse.

It will scarcely be pretended that an act of the legislature, imposing a tax directly upon A., not being a resident of the village of Owego, and having no property therein, for the purpose of raising money to pay the debt of the village, would be a valid act.

A. is a natural person, the village an artificial person. The supposed act would, in effect, be taking the property of one person and giving it to another; and would, most certainly, be a violation of the spirit of that provision of the constitution which declares that "no person shall be deprived of life, liberty or property without due process of law;" and, also, of that provision, "nor shall private property be taken for public use without just compensation," which senator Tracy, in 18 *Wend.*, 59, construed as "equivalent to a constitutional declaration that private property, without the consent of the owner, shall be taken only for the public use, and then only upon a just compensation" (*People* agt. *Mayor of Brooklyn*, 4 *Coms.*, 419).

The principle on which taxation proceeds, and is held not

to contravene that provision of the constitution, is that the tax-payer is supposed to receive his just compensation in the benefit which he derives from the appropriations of the money which he is compelled to pay.

In the case supposed, A. is under no obligations to pay the debt of the village, and can derive no benefit from it. The principle does not apply: *cessat ratio, cessat et ipsa lex* (*Taylor* agt. *Porter*, 4 *Hill*, 140; *Embury* agt. *Conner*, 3 *Coms.*, 511; *Powers* agt. *Bergen*, 2 *Selden*, 358).

Says BRONSON, J., in *Taylor* agt. *Porter*, "Under our form of government the legislature is not supreme; it is only one of the organs of that absolute sovereignty which resides in the whole body of the people. Like other departments of the government, it can only exercise such powers as have been delegated to it; and when it steps beyond that boundary, its acts, like those of the most humble magistrate in the state who transcends his jurisdiction, are utterly void. Where, then, shall we find a delegation of power to the legislature to take the property of A., and give it to B., either with or without compensation? Only one clause of the constitution can be cited in support of the power; and that is, 'the legislative power of this state shall be vested in a senate and assembly.' But the question immediately presents itself, what is that legislative power, and how far does it extend? Does it reach the life, liberty or property of a citizen who is not charged with a transgression of the laws, and where the sacrifice is not demanded by a just regard for the public welfare? * * * The legislative power of this state does not reach to such an unwarrantable extent; neither life, liberty nor property, except when forfeited by crime, or where the latter is taken for public use, falls within the scope of the power."

So, in *Powers* agt. *Bergen* (2 *Seld.*, 367), JEWITT, J., says: "If the legislature should pass an act to take private property for a purpose not of a public nature, as if it should provide, through certain forms to be observed, to take the property

of one and give it to another, or if it should vacate a grant of property under pretext of some public use, such cases would be gross abuses of the discretion of the legislature, and fraudulent attacks on private rights, and the law would be clearly unconstitutional and void," citing 2 *Kent Com.*, 340.

Will any one pretend that if the "forms to be observed" were by a process of taxation, and levying upon and selling the property of one and handing over the proceeds to another, it would not equally be a "fraudulent attack upon private rights," as where the property itself, and not the proceeds of it, were taken from one and handed to another?

WRIGHT, J., in *Grant* agt. *Courter* (24 *Barb.*, 238, 239), qualifies the legislative power to tax, saying: "We are to be understood, of course, as referring to taxation for a public purpose, in which the community that pays the tax has an interest." And *Clarke* agt. *The City of Rochester*, 14 *How.*, *P. R.*, 204; *Read from this case from pp.* 208, 211, 212, 214; *Town of Guilford* agt. *Cornell*, 18 *Barb.*, 644, 645; *White* agt. *White*, 5 *Barb.*, 484, 485, MASON, J.

And yet this is precisely what this act of 1857 does, if the effect claimed for it is given to it.

4. The act of April 15, 1857, was passed, there not being three-fifths of all the members elected to each house present on the final passage thereof.

The fact is alleged in the complaint, and admitted by the default.

That it was necessary that three-fifths should have been present, we insist, under section 14, of art. 7, of the constitution of New York, which is as follows: "On the final passage, in either house of the legislature, of every act which imposes, continues or revives a tax, or creates a debt or charge, etc., the question shall be taken by yeas and nays, etc., and three-fifths of all the members elected to each house shall, in such cases, be necessary to constitute a quorum therein."

This act, if it subjects plaintiff and his property to taxation by the village of Owego, although it does not in terms impose

Pumpelly agt. Village of Owego.

a tax, still authorizes a tax to be imposed, *qui facit per alium, facit per se.* If the legislature cannot, itself, impose a tax, except in the way marked out, it cannot, except in the same way, authorize another to impose the tax (*Clarke* agt. *The City of Rochester*, 13 *How., P. R.*, 204).

Security against arbitrary legislation is not dependent on negatives expressed to legislative power, but on natural rights.

Moreover, it makes him and his property chargeable with their proportion of all taxes assessed by the village. Hence, it " creates a charge " upon plaintiff and his property.

We have a legislative construction of the constitutional provision in the uniform practice of certifying all acts which authorize the imposition of taxes, as having passed, three-fifths being present.

The act of April 9, 1851, was so certified, and so the charters of all villages where power to tax is given since the adoption of the present constitution.

3. The plaintiff, in bringing this action upon the equity side of the court, does not come in conflict with that class of decisions which hold that a tax-payer cannot maintain a suit, brought to restrain the levy and collection of an illegal tax.

Those cases proceed upon the ground that the plaintiffs were interested in preventing the act sought to be enjoined, only in common with the rest of the community—and the relief sought was such as would inure to the whole community —amounting to a total prohibition of the action of the defendant, not with reference to the plaintiff only, but to the rest of the community.

The principle is, that where there is no direct individual injury, no action can be maintained by a citizen, on the ground that his interests, as a member of the state, have been interfered with. This is the doctrine of *Doolittle* agt. *Board of Supervisors of Broome* (16 *How. R.*, 512).

The action, in that case, was brought by the plaintiffs, a portion of the freeholders of a new town sought to be erected

Pumpelly agt. Village of Owego.

by defendants, to restrain the organization of the town. Judge DENIO, in giving the opinion of the court, remarks, in the outset of his opinion, that "It is not pretended that the plaintiffs have any interest which is not common to all the resident freeholders of the alleged new town of Port Crane. * * * The general rule certainly is, that for wrongs against the public generally, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state, in its political character." He then proceeds to illustrate the principle by cases of nuisance, and says: "Common or public nuisances, which are such as are inconvenient or injurious to the whole community in general, are, as all are aware, indictable only, and not actionable. * * * Where the act complained of, or which is apprehended, besides being a public nuisance, is specially injurious to a private person, he may maintain an action, or a bill for an injunction, in his own name."

After referring to several cases, the judge proceeds: "These cases are sufficient to show the principle upon which the courts act in this class of cases. In the present case, no difficulty of the kind referred to arises. The act of the supervisors has no bearing upon the plaintiffs' individual interests. Whatever interest they have in the question belongs to them only as citizens and members of the community."

On the principle above stated, the court held that the plaintiffs could not in that case maintain their action. But here the plaintiff complains of a special injury to himself, not as a "member of the state," and in common with the rest of the community, but individually, he, alone, is affected by the acts complained of, done and to be done; and therefore, on the principle of the same case, he may maintain the action.

But it may be said that the right to maintain an action on the equity side of the courts, in such case, is modified by the question whether the plaintiff has an adequate remedy at law. To that effect is the case of *Haywood* agt. *The City of Buffalo* (4 *Kern.*, 534).

The court in that case, after laying down the general rule that where a matter is, *prima facie*, one of legal cognizance, a court of equity will not take cognizance of it, recognize the existence of several exceptions, one of which is, " Where the proceeding in the subordinate tribunal will necessarily lead to a multiplicity of suits."

This, we insist, is the case here, and with that view we have brought this action, to have the rights of the parties settled in one suit, rather than be compelled to bring an action at law from time to time, for an interminable period, whenever a new tax shall be collected.

It stands admitted as a fact, that " defendants intend to proceed, and will proceed, unless restrained by this court, from time to time to assess and tax " plaintiff and his property for the purposes aforesaid, and unless this court intervene, and settle the rights of the parties, an interminable series of trespass suits is before them.

It is on this very principle that this court, when it has obtained jurisdiction of a cause for any purpose, will retain jurisdiction for the purpose of doing complete justice between the parties.

The court has, by the default of defendant, obtained such jurisdiction. The cause is before the court. On the principle of avoiding a multiplicity of suits, this court will not turn the plaintiff over to a court of law, and compel a new suit.

" In many cases the courts of ordinary jurisdiction admit, at least for a certain time, of repeated attempts to litigate the same question. To put an end to the oppression occasioned by the abuse of this privilege, the courts of equity have assumed jurisdiction." Repeated actions of ejectment for same premises instanced, *Mitford Pl.* (143, 144). This case stands on the same principle. The repeated actions have not yet been brought, but it is admitted that they will be, and the repetition of actions was necessary only to show that others would continue to be brought. This appearing now, we are in the same situation as we should be after having

been compelled to bring several trespass suits to recover for our property illegally taken, after a decision in our favor.

It is, we submit, therefore, a case eminently proper for this court, sitting as a court of equity, to take cognizance of and decide.

And yet, if the court should think otherwise on the merits, still we most confidently insist that we are, by reason of defendant's default, for the reasons submitted under our first point, entitled to the relief demanded in our complaint.

WRIGHT, J.—The plaintiff, resided and had real and personal property liable to taxation for village purposes, within the village of Owego, as its limits were established by an act of legislature, passed in April, 1857. The proper corporate authorities assessed against him a tax of some forty dollars, for the payment of the debts and expenses of the corporation, and were proceeding to collect such tax when he brought his action to restrain its collection, and also to restrain the corporation from assessing and taxing his property for like purposes in the future. The general grounds stated in the complaint for the relief demanded was, that the tax was illegal and void.

The facts alleged were substantially these :

In April, 1851, the legislature passed an act declaring what should constitute the territorial limits of the village of Owego, and prescribing the powers of the corporation as to taxation, and the mode of exercising them. In April, 1854, another act was passed amendatory of the former one, in which the territorial limits of the village were changed again, and the taxing powers of the corporation enlarged. The plaintiff was not a resident within the village, as its limits were established by these acts, and much the larger part of his real estate was situated outside of them. In April, 1857, the legislature passed another act entitled " An act enlarging the boundaries of the village of Owego, in the county of Tioga." The first section declared that " the territory within the following limits

(describing them) shall constitute the village of Owego."
The second section declared that " the provisions of any act
heretofore passed, which are inconsistent with this act, are
hereby repealed." Both the plaintiff and his property are
within the limits of the village, as established by the latter
act. The act was passed without the consent and against the
remonstrance of the plaintiff, and it is assumed (from the fact
that the secretary of state in the publication of it did not,
after the bill became a law, add the words, " three-fifths being
present " ), that it did not have its final passage when three-
fifths of all the members elected to each house were present.
Prior to the passage of the act of 1857 the village of Owego
contracted debts for various purposes, which debts, or a part
thereof, the corporation owed at the time of the passage of
such act.

At an annual election for village officers, held on the 5th
January, 1858, the meeting of electors, by resolution, directed
to be raised by tax, on the village, for village purposes, the
sum of $1,000. The only estimate of the moneys necessary
to be raised during the year then next ensuing, which was
prepared by the trustees and submitted to the meeting, being
a general one, that it would be necessary to raise by tax for
the year 1858, to pay the debts and current expenses of the
corporation, the sum of $1,000, and not an estimate in detail
showing the sums necessary for each object of expenditure.
On the 4th February, 1858, the board of trustees, by vote,
ordered that the sum of $2,767 be raised by tax, for debts
and expenses, of which amount the sum of $1,757 was for an
indebtedness which had accrued and was incurrred prior to
the passage of the act of April, 1857.

Immediately after the said sum of $2,767 had been ordered
to be raised by tax, the assessors of the village proceeded to
make a valuation of the estates, real and personal, subject to
taxation, within the boundaries specified in the act of April,
1857, as constituting the village of Owego, including therein
the taxable property within such boundaries, and prepared

an assessment roll thereof assessing the whole of said sum of $2,767, and assessed and taxed the property of the plaintiff the sum of forty dollars and seven cents, as the proportion to be paid by him of that sum.   On the 23d February, 1858, the assessors annexed a warrant to the assessment roll commanding the collector of the village to receive and collect from the plaintiff the tax of forty dollars and seven cents, and the collector, under and by virtue of such warrant, in proceeding to collect such tax, levied on and seized a horse of the plaintiff of the value of $150, to satisfy the same.   It is from the warrant in the plaintiff's complaint that the defendant claims the right and authority under the several provisions of the acts of 1851, 1854 and 1857, to tax the property of the plaintiff situated without the limits of the village of Owego, as established by the act of 1854, but within such limits as established by the act of 1857, to assist in paying not only the debts and expenses incurred and to be incurred by the corporation after the passing of the act of 1857, enlarging the village boundaries, but also the debts incurred and owing by the village prior to the passage of such acts; and it is charged that the corporation intends to proceed, and will proceed, unless restrained by the court, not only to collect the tax already assessed against the plaintiff's property and levied on his horse, but from time to time to assess and tax his property for the purposes aforesaid.   There is no allegation in the complaint charging or imputing to the defendant any fraud in causing the tax to be levied and raised; nor is it alleged or pretended that the acts of the defendant will lead to a multiplicity of suits; nor is it essential that the plaintiff will suffer an irreparable injury; nor does the complaint show that the plaintiff has not a perfect remedy at law.   Indeed, it shows affirmatively that he has, for if the tax of which he complains was illegally assessed, or the village authorities assumed to assess him as a resident of the corporation, when in fact he was not, their acts were void or voidable, and against which the plaintiff had an adequate remedy at law.

Pumpelly agt. Village of Owego.

The question involved is one merely of power in the corporation to tax the plaintiff for village purposes, and if the power does not exist, or, if existing, the particular assessment was illegal, he has a complete legal remedy. Conceding the facts stated in the complaint to be true, I am of opinion that they were not sufficient to constitute either a legal or equitable cause of action. It cannot be claimed that the plaintiff would have any remedy at law if the tax of which he complains was legally imposed. Whether the tax was legal or illegal depended on the question of corporate authority, and whether he was an inhabitant of and property-holder within the corporation. The tax was assessed and levied under the provisions of the acts of 1851 and 1854, relating to the village, and the assessment was partly for debts incurred before the enlargement in 1857 of the boundaries of the corporation, and partly to meet the expenses for village purposes subsequently.

The act of 1851, which purports to amend the several acts incorporating the village, provided that ten days before each annual election the board of trustees shall prepare an estimate of the moneys necessary and proper to be raised during the year then next ensuing to pay the debts and expenses of the corporation; and at such annual election the same should be submitted by the president or other presiding officer to the meeting of electors, and such meeting may thereupon, by resolution, direct to be raised by tax on the village, for paying the corporate debts and expenses, a sum, not exceeding $1,000 in any one year, as they should deem necessary and proper (*Laws of* 1851, *ch.* 11, §§ 33, 34). This estimate was prepared for 1858, and submitted to the meeting of the electors. It was not an estimate in detail showing the sums necessary for each object of expenditure, but a general estimate that the sum of $1,000 would be required to be raised by tax for the year 1858 to pay the debts and expenses of the corporation. The meeting of electors voted a tax of $1,000, and it was put into the assessment. It is contended that this

estimate made by the board did not fulfill the requirements of the law, it being a mere statement of a gross amount, and that consequently the electors had no authority to vote the tax. I am clearly of the opinion that the position is unsound and that the meeting of electors was not divested of authority. The estimate was a substantial fulfillment of the statute requirement, and was sufficient. It could hardly have been contemplated that the trustees should make a detailed estimate of each of the sums necessary for each object of expenditure, for this would be often quite impracticable, but if it was required the omission would not deprive the electors of authority to vote the tax. Such authority does not depend upon the form in which the estimate is prepared and submitted to them by the board of trustees. This disposes of the first objection, that, measured by the provisions of the act of 1851, the tax was illegal.

But it is urged that if the tax was legally imposed, as respected those within the limits of the village, as defined by acts of 1851 and 1854, the defendant was without authority to tax the plaintiff, at least to pay the debts of the corporation that accrued before the passage of the act enlarging its boundaries. The plaintiff was not a resident or property-holder within the limits of the corporation before the passage of the act of 1857, but if that act was valid and operated to amend the village charter, he became such by force of it. It is not denied that if it was constitutionally enacted, and is to be considered an amendment of the village charter, and not a new act of incorporation, being itself the only charter of the village thereby incorporated, the plaintiff and his property were brought within the corporation. It is contended, however, that it is not an amendment of the charter, but an independent act carrying with it to the new territory none of the provisions of the charter, but that if it is to be treated as an amendment then it is unconstitutional and void. Neither of these positions are tenable. It is manifest that it was not the legislative intention, by the act of 1857, to create any

new municipal corporation, investing it with no powers whatever. The village of Owego is recognized as an existing organization, and all the act assumes to do is to enlarge its boundaries. The title declares its object, and the second section repeals the provisions of any act theretofore passed inconsistent with it. All that was inconsistent with it were existing acts that related to the boundaries, and the acts of 1851 and 1854 with this exception remained unaltered. It seems to me that it would be absurd to hold that it was the intention of the legislature, and that was the effect of the enactment to create a new corporation by the name of the village of Owego, conferring on it no powers whatever, while such a corporation already existed with complete powers for municipal government. The title is, " An act enlarging the boundaries of the village of Owego, in the county of Tioga." The title or preamble of a statute may be said to be no part of it, but it may be used to enable the courts to arrive at the intention of its framers. The intention was clearly in this case to amend the old charter, and not to create a new corporation, with none of the powers of a municipal organization.

Equally groundless are the objections to the constitutionality of the act. These are twofold. 1st. That the legislature has no constitutional authority to impose or authorize the defendant to impose a tax upon persons or property thus brought into the corporation against their consent to pay its existing debts ; and second, that the act was passed in violation of the constitutional provision that " on the final passage in either house of the legislature of every act which imposes, continues or revives a tax, or creates a debt or charge, the question shall be taken by yeas and nays, and three-fifths of all the members elected to such house shall, in such cases, be necessary to constitute a quorum therein " (Con., art. 7, § 14). With regard to the first objection it is enough to say there is no constitutional limitation upon the legislative power to tax the persons and property of individuals within the state. The power may be executed as well to pay debts incurred

before the property-holder comes within its jurisdiction, as those incurred afterward when a municipal corporation is created, and the state confers upon it a portion of its taxing power to raise money for municipal purposes. The property-holder within the limits of the corporation is subject to taxation without regard to the question when the liabilities were contracted to discharge which the tax is imposed. He cannot be liable to be assessed to pay off and discharge liabilities of the city or village incurred after he shall become a resident, and exempt from taxation for debts previously legally incurred for city or village purposes. As well might a person from another state settling in ours, and bringing with him a large amount of property, subject to taxation, object to being taxed to pay the debts of this state that had been previously incurred.

Nor is there any force in the objection that the act of 1857 had its final passage when three-fifths of all the members elected to each house were not present, even if the averment of the complaint were sufficient to raise the constitutional point. The legal presumption is, that the law received the constitutional vote required, and that the requisite number were present at its passage, although the certificate of the secretary of state may be wanting in his publication of the law, and if it is designed to raise that question it must be expressly put in issue by the pleading. The complaint contains no express averment that three-fifths of all the members elected to each house were not present on the final passage of the bill. It alleges that in the publication by the secretary of state of the act, the secretary has not, after stating when the bill became a law, added the words, three-fifths being present, but said words are absent from said law as published, and nowhere appear in such publication, and the plaintiff thereupon avers that said bill did not pass when three-fifths of all the members elected to each house were present on the final passage thereof. This is not an express averment of the fact that the requisite number of members were not present

at its passage.   The plaintiff avers that the bill did not pass when three-fifths were present, because in the publication of it by the secretary of state the words " three-fifths being present " nowhere appear in such publication.   But it was not required that three-fifths of the members should be present at the final passage of the act.   It simply enlarged the territorial bounds of the village.   It imposed no tax, nor did it continue or revive one, or create a debt or charge within article 7, § 14 of the constitution.   The acts that authorize the imposition of the tax were passed in April, 1851, and April, 1854, and were applicable to then present boundaries, but on the 15th April, 1857, the act last mentioned became a .part and parcel of the acts of .1851 and 1854; and was then on that day read and so construed together as one entire act. Such was the lgal effect.

I am of the opinion, therefore, that the complaint did not set forth either a legal or equitable cause of action.   But if I am mistaken in the opinion that the complaint does not show an illegal assessment of the plaintiff, it is conclusively settled in this state that an action will not lie to restrain the collection of a tax unless the case were brought within some acknowledged head of equity jurisdiction (*Moore* agt. *Smidley* 6 *John. Ch.*, 28 ; *Wiggin* agt.   *The Mayor, etc., of New York*, 9 *Paige*, 16 ; *Van Dorn* agt. *The Same, id.*, 388; *The Mayor of Brooklyn* agt. *Meneserole*, 26 *Wend. R.*, 132 ; *The N. Y. Life Insurance Co.* agt. *The Supervisors of the City of New York*, 4 *Duer*, 192 ; *Haywood* agt. *The City of Buffalo*, 4 *Kernan*, 534; *Susquehanna Bank* agt. *Supervisors of Broome County*, 25 *N. Y.*, 312).   In *Wilson* agt. *The Mayor of New York*, where the plaintiff had been taxed in the city of New York ·for personal property while he was a resident of the state of Connecticut, and he commenced the action to restrain the collection of the amount at the June term, 1861, the court considered the point of jurisdiction so well settled that on the argument of the appeal we gave judgment against the plaintiff, reversing the judgment of the New York common

Pumpelly agt. Village of Owego.

pleas.    There is no allegation in the complaint under considera-
tion bringing the case within any acknowledged head of equity
jurisdiction.    The charge that the corporation intend to pro-
ceed, and will proceed unless restrained, not only to collect
the tax in question, but from time to time to assess and tax
the plaintiff's property for similar purposes, amounts to
nothing in that direction.    Courts of equity assume jurisdic-
tion when there might otherwise be a multiplicity of suits,
and the right had been once settled at law, but that is not
this case.    Here no right has been litigated or settled in a
court of law, and it cannot be pretended that additional suits
are to be prevented by a judgment in this action in the
plaintiff's favor.  That the corporation may again assess and
tax his property for village purposes is no ground for equitable
jurisdiction.

It remains to be considered whether after the defendant
was in default by not demurring or answering, and the plain-
tiff applied for the relief demanded in his complaint, the
court erred in denying it.    It seems that upon the application
the defendant appeared to oppose the motion, and after
hearing the counsel for the respective parties it was denied.
I have no difficulty on this point.    This was an equitable
action, and although no demurrer or answer was interposed,
the plaintiff was not entitled to the judgment asked for in his
complaint as a matter of course.    The Code provides that in
such action, upon a failure to answer, application shall be
made to the court for the relief demanded in the complaint
(*Code*, § 246).    This is in accordance with the practice of
the late court of chancery, for in that court, when the bill
was taken *pro confesso*, the cause had to be brought to a
hearing the same as when an answer was put in, and it was
not the practice of the court to allow the plaintiff to take a
decree according to the prayer of his bill, nor was he per-
mitted to draw up the decree.    The defendant in this case
admitted nothing by a failure to answer but the truth of the
facts alleged against him.    By the default the right was not

waived to appear and object to the jurisdiction of the court, and that the complaint did not state facts sufficient to constitute a cause of action. The Code expressly reserves the right to a defendant, though the objection be not taken either by demurrer or answer (*Code*, § 148). If the defect in the complaint be that it does not set forth an equitable cause of action and entitle the plaintiff to the relief demanded, it is one that cannot be cured, and would not be waived by any pleading, and I think the objection could be raised at any time when the parties are before the court at a special or general term. But if it was that a default in answering would afterward preclude a defendant from objecting that the complaint does not state a case within the appropriate jurisdiction of a court of equity, it would not necessarily follow that the denial of the application in this case for the relief demanded in the complaint was erroneous. It is a fundamental rule, says judge STORY, which is always indispensable to be observed, that the bill must state a case within the appropriate jurisdiction of a court of equity. If it fails in this respect the error is fatal in every stage of the cause, and can never be cured by any waiver or course of proceeding of the parties, for consent cannot confer a jurisdiction not vested by law (*Story's Eq. Pleading*, §§ 10, 31). Where the case, as presented by the plaintiff, shows a want of jurisdiction in the court (though the defendant by his course of proceeding may have waived the right to raise the objection), there can be no doubt of the power of the court *ex meio motio* to refuse the relief asked for. If the court has not jurisdiction of the subject of this action, it is eminently proper that it should not be usurped, and the application for relief, though even *ex parte*, ought to be denied. That was this case. The order of the supreme court should be affirmed.